# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **MARVIN EVANS, ET AL.** | * | **CIVIL ACTION NO.  11-0214** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **INTERNATIONAL PAPER CO.** | * | **MAG. JUDGE KAREN L. HAYES** |

### MEMORANDUM RULING

Before the undersigned Magistrate Judge, on reference from the District Court, are motions to:  1) remand [doc. # 12] filed by plaintiffs, and 2) consolidate [doc. # 16] filed by defendant International Paper Co.  For reasons stated below, the motions are **DENIED**.[1]

### Background

On December 9, 2010, 37 named plaintiffs, led by Marvin Evans, filed suit, individually, and as representatives of a putative class of former employees of defendants, International Paper Company ("IP") and/or Papco, Inc. ("Papco"), for recovery of occupational hearing loss damages that they sustained while employed with defendants.  Plaintiffs originally filed suit in the 4th Judicial District Court for the Parish of Morehouse, State of Louisiana.  On December 28, 2010, however, defendant, IP, removed the case to federal court on the basis of diversity jurisdiction, as expanded by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), where it was assigned Civil Action Number 10-1916 ("*Evans I*").  The *Evans I* plaintiffs do not contest federal subject matter jurisdiction.

---

[1] As these motions are not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

Instead, on January 14, 2011, the same plaintiffs commenced new actions against IP in state court.  This time, however, they divided their original cause of action into three separate class actions, *Evans v. International Paper Co.*, ("*Evans II*"), *Belin v. International Paper Co.*, and *Ackers v. International Paper Co.*, and expressly limited their individual and total damages in hopes of avoiding the amount in controversy threshold that would trigger removal.  Plaintiffs' efforts proved ineffective, however, because IP again removed the cases to federal court on the bases of both traditional diversity jurisdiction, and as expanded by CAFA.  (Feb. 7, 2011, Notice of Removal).

On March 4, 2011, plaintiffs in *Evans II, Belin*, and *Ackers* filed motions to remand the actions to state court for lack of subject matter jurisdiction and because of a procedural defect in the removal process.  On March 17, 2011, IP filed a motion to consolidate *Evans II, Belin*, and *Ackers* with *Evans I.* The motions are opposed.  After delays for briefing and supplemental briefing, the matter is now before the court.

## Law and Analysis

"In general, defendants may remove a civil action if a federal court would have had original jurisdiction."  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (*De Aguilar II*) (citing 28 U.S.C. § 1441(a)).  The removing defendant, however, bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal.  *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)).  Moreover, the removal statutes and associated ambiguities are strictly construed in favor of remand.  *Id*.

As stated earlier, IP contends that subject matter jurisdiction, and hence removal, is supported via diversity under §§ 1332(a) and/or (d).  Accordingly, the court considers whether subject matter jurisdiction is satisfied under each provision.

### A.       Traditional or Ordinary Diversity Under § 1332(a)

Traditional diversity jurisdiction requires complete diversity of citizenship and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332(a).  "All plaintiffs must be diverse in citizenship from all defendants in an action brought under the jurisdiction conferred by 28 U.S.C. § 1332(a)."  *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). In a putative class action, however, only the named parties need be diverse.  *Manguno*, 276 F.3d at 723.

Plaintiffs do not contest that all parties are diverse; rather, they argue that the notice of removal is procedurally defective because removing defendant failed to affirmatively allege the citizenship of each named plaintiff.  Indeed, when jurisdiction depends on citizenship, "citizenship must be '*distinctly* and *affirmatively* alleged.'"  *Getty Oil, Div. Of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted) (emphasis in original). This rule requires "strict adherence."  *Id.*

In its Notice of Removal, IP alleges that it is a New York corporation, with its principal place of business in Tennessee.  (Notice of Removal).  It further asserts that one of the named plaintiffs is a citizen of Louisiana, and that all plaintiffs are neither citizens of New York nor Tennessee.  *Id*.  To the extent that IP initially failed to affirmatively allege the citizenship of all named plaintiffs, it has since remedied this defect by affirmatively alleging that all plaintiffs are citizens of Louisiana.  (Def. Reply Memo., pg. 3).[2]  Accordingly, the parties are completely diverse.

The remaining requirement for the exercise of diversity jurisdiction under § 1332(a), is an amount in controversy greater than $75,000.  Moreover, so long as the amount in controversy for

---

[2] *See* 28 U.S.C. § 1653:  "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

at least one plaintiff in a class action exceeds the jurisdictional minimum, then the court may

exercise supplemental jurisdiction over the remaining class members' claims, regardless of their

individual damages. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S.Ct.

2611, 2620 (2005); *In Re Abbott Laboratories, Inc.*, 51 F.3d 524 (5th Cir. 1995).

  In this case, plaintiffs purport to limit their damages beneath the jurisdictional threshold

by alleging that

> the amount of damages sustained by each member of the Class herein do not
> exceed the sum of **FORTY-FIVE THOUSAND ($45,000.00) DOLLARS**,
> exclusive of interest and costs and each member of the Class hereby waives,
> forgoes and relinquishes any and all damages in excess of **FORTY-FIVE**
> **THOUSAND ($45,000.00) DOLLARS**, exclusive of interest and costs.

(Petition, ¶ 37) (emphasis in original).

Plaintiffs further allege that the total amount in controversy is less than five million dollars,

exclusive of interests and costs. *Id*., ¶ 39.

  The sum sought by plaintiffs is controlling only if it was made in good faith. *See De*

*Aguilar II, supra*.  Therefore,

> if a defendant can show that the amount in controversy actually exceeds the
> jurisdictional amount, the plaintiff must be able to show that, as a matter of law, it
> is certain that he will not be able to recover more than the damages for which he
> has prayed in the state court complaint.

*De Aguilar II*, 47 F.3d at 1411.

In other words, plaintiffs' allegations remain presumptively correct until the removing defendant

can show by a preponderance of the evidence that the amount in controversy exceeds the

jurisdictional minimum. *Id*.

  "To satisfy the preponderance standard, the removing defendant may support federal

jurisdiction either by establishing that it is 'facially apparent' that the claims probably exceed

$75,000 or by establishing the facts in controversy in the removal petition or [summary

judgment-type evidence] to show that the amount-in-controversy is met." *Felton v. Greyhound*

*Lines, Inc.*, 324 F.3d 771, 774 (5th Cir. 2003); *accord St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998).  Once the defendant makes this showing, removal is proper unless plaintiff can show that it is legally certain that his recovery will not exceed the amount alleged in the complaint.  *DeAguilar II, supra.*

The undersigned initially observes that although the class representatives appear willing to waive their own claims for damages in excess of the jurisdictional threshold, they do not have authority to waive damages on behalf of other unnamed class members.  *Ditcharo v. United Parcel Service, Inc.*, 376 Fed. Appx. 432, *4 (5th Cir. Apr. 29, 2010) (unpubl.) (citing *DeAguilar II* and *Manguno*).  Further, in the absence of a binding stipulation by the unnamed class members, it is facially apparent that the amount in controversy for each unnamed member's claim for damages exceeds $75,000.  *See Alford v. International Minerals & Chemical Corp.*, Civil Action No. 05-1108 (M.D. La. March 27, 2006) (aggregating hearing loss cases that awarded between $90,000 to $150,000, for purposes of determining that individual damages claims for exposure to occupational noise exceeded $75,000).[3]

Furthermore, plaintiffs' suit is brought as a class action under Louisiana Code of Civil Procedure Article 591, *et seq.*  (Petition, Prayer).  In their prayer for relief, plaintiffs seek costs and expenses of the litigation, including reasonable attorneys' fees  – separate and apart from their self-imposed, individual damages cap.  *Id*.  This distinction proves material because the Fifth Circuit has held that

---

[3]  Plaintiffs cite cases where plaintiffs recovered less than $75,000 for hearing loss.  For instance in *Arceneaux v. Amstar Corp.*, plaintiffs settled their hearing loss claims for $35,000 per plaintiff.  *Arceneaux v. Amstar Corp.*, 969 So.2d 755 (La.  App. 4th Cir. 2007).  In *Arceneaux*, however, plaintiffs stipulated that their individual damages did not exceed $50,000. *See Arceneaux, supra*.  Plaintiffs also cite another case where, after a bench trial, two plaintiffs each received $50,000 for their hearing loss. *Broussard v. Union Pacific R. Co.*, 700 So.2d 542 (La. App. 2d Cir. 1997).  Again, however, the *Broussard* plaintiffs specifically pleaded that their damages did not exceed $50,000.  *Id*.

when, in connection with a Louisiana class action suit that asserts a cause or
causes of action for which there is no separate attorney's fees provision under
Louisiana law, attorney's fees are nevertheless (1) allowable to the class
representatives, and (2) attributable to the class representatives for purposes of the
court's calculation of the amount in controversy. Here, art. 595(A) serves dual
purposes in the context of determining jurisdictional amount in connection with
removal and remand of Louisiana class actions: (1) Art. 595(A) authorizes the
allowance of attorney's fees to class representatives in default of fees being
provided by some other separate statute; and (2) as construed in *Abbott*, art.
595(A) requires that allowable attorney's fees be attributed to the class
representative(s) (to the exclusion of non-representative members of the class) in
calculating the amount in controversy under § 1332. Stated differently, when a
putative Louisiana plaintiffs' class advances a cause of action, such as tort or strict
liability, for which Louisiana makes no separate provision for attorney's fees, the
aggregate fee allowable under art. 595(A) shall be attributed entirely to the class
representatives and included in calculating the amount in controversy.

*Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 876-877 (5th Cir. 2002).

Further, at least one court has recognized that under *Grant*, class action attorney's fees are a

common right of the class representatives for purposes of assessing amount in controversy.

*Dixon v. Nan Ya Plastics Corp.*, 2007 WL 4561136 (M.D. La. Dec. 20, 2007).  As such, the

attorney's fee award for the entire class action need only exceed $30,000 to breach the $75,000

jurisdictional threshold – when it is combined with each class representative's self-imposed

damages cap of $45,000.[4]  In any event, the same result is obtained, even if the potential

attorneys' fees for the class are divided pro rata amongst the named plaintiffs.  *See* discussion,

*infra*.

While plaintiffs purport to limit the prospective class to less than 100 members,[5] and

---

[4]  In *Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, the Supreme Court held that
[w]hen two or more plaintiffs, having separate and distinct demands, unite for
convenience and economy in a single suit, it is essential that the demand of each be
of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a
single title or right, in which they have a common and undivided interest, it is enough
if their interests collectively equal the jurisdictional amount.
*Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41, 32 S.Ct. 9, 9 (1911).

[5]  Petition, § 38.

6

otherwise do not specify the number of class members, they *do* allege that the number of prospective class members is so large that joinder would prove impracticable.  (Petition, ¶ 32). Moreover, plaintiffs seek to certify a class on behalf of employees who worked at specified IP facility(ies) for six or more months prior to December 31, 1979.  (Petition, ¶ 5). Also, the exposure period for the class representatives lasted as long as 40 years, which suggests the likelihood of a large number of potentially afflicted employees.  (Petition, Exh. A).

Plaintiffs further allege that the individual joinder of each class member would create a "massive and unnecessary" burden on the court.  *Id*., ¶ 35(d).  Given that plaintiffs joined 36 class representatives in *Evans I*, without any apparent undue burden upon class counsel or the court, the allegations in the instant petition necessarily imply that the number of class members measurably exceeds the 36 named plaintiffs considered manageable in *Evans I*.  Accordingly, to satisfy the allegations in the instant petition, it is facially apparent that the putative class, more likely than not, equals *at least* 60 members.[6]

With these figures, the court is able to discern, by a preponderance of the evidence, the minimum amount in controversy.  Subtracting the five class representatives from the conservatively estimated 60 member class, leaves at least 55 unnamed class members. Multiplying 55 members times potential damages of at least $80,000 each, *see Alford, supra*, produces a potential damages award total of $4,400,000 for the unnamed class members.  Adding to this award the $225,000 self-capped damages of the named representatives (5 plaintiffs x

---

[6] In another occupational hearing loss case, *Albritton v. International Minerals & Chemical Corp.*, Civil Action Number 06-0774 (W.D. La), this court did not experience any insurmountable case management issues with but 45 named plaintiffs.

The court's determination that the  prospective class must be at least 60 members strong does not mean that the class is less than 100 members.  *See* discussion, *infra*.  The court's determination of class size for purposes of assessing amount in controversy is the minimum number that is supported by plaintiffs' allegations regarding numerosity and the alleged "massive" burden on the court if all prospective plaintiffs are joined in the suit.

$45,000), produces a potential damages award of $4,625,000 for the at least 60 named and unnamed class members.

Without knowing the number of hours that class counsel will reasonably expend on this case, the court cannot meaningfully employ the lodestar method to compute the potential attorney's fee award.  If the case is litigated over a several year period, the number of hours reasonably expended by counsel could become quite significant.  At this stage of the proceedings, the court can only derive a potential attorneys' fee as a percentage of the class members' damages.  *See White v. General Motors Corp.*, 718 So.2d 480, 509 (La. App. 1st Cir. 1998) (in determining a reasonable attorneys' fee, Louisiana courts employ the "percentage of the fund" approach) (citations omitted); *Blum v. Stenson*, 465 U.S. 886, 900, 104 S.Ct. 1541 n. 16 (1984) (noting that for calculation of attorney's fees under the "common fund doctrine," a reasonable fee is based on a percentage of the fund bestowed on the class).  Using a typical class action benchmark fee award equal to twenty-five percent of the common fund,[7] produces potential class attorney's fees of $1,156,250  – well in excess of the $30,000.01 in fees necessary to establish by a preponderance of the evidence that the amount in controversy for each named plaintiff exceeds $75,000.

In response to defendant's showing, plaintiffs have failed to show that it is legally certain that they will recover less than the jurisdictional minimum.  *See* discussion, *supra*.[8]  Thus, the

---

[7]  *See Vela v. Plaquemines Parish Gov.'t*, 811 So.2d 1263 (La. App. 4th Cir. 2002) (court approved attorney fee award equal to 30% of the judgment value – albeit, the sum also coincided with the fee derived via the lodestar); *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398 E.D.La. Aug. 17, 2010) (court noted that The Manual for Complex Litigation states that a fee of 25% of a common fund is a typical benchmark award, but then proceeded to award fees equal to 37 % of the fund); *In re Bayou Sorrel Class Action*, 2006 WL 3230771 (W.D. La.  Oct 31, 2006) (court awarded 36% of the common fund for attorneys' fees).

[8]  Plaintiffs' allegation that the total amount in controversy is less than $5 million is not availing.  The allegation does not constitute a binding stipulation or waiver.  *See In Re 1994 Exxon Chemical Fire*, 558 F.3d 378, 388 (5th Cir. 2009).  Moreover, plaintiffs' allegation regarding amount

court enjoys subject matter jurisdiction, via traditional diversity, 28 U.S.C. § 1332(a), and may exercise supplemental jurisdiction, as necessary, 28 U.S.C. § 1367.

**B.      Class Action Diversity Under § 1332(d)**

Having determined that the court enjoys subject matter jurisdiction via traditional diversity, defendant's alternative grounds for diversity jurisdiction via CAFA is redundant. Nonetheless, the court proceeds to briefly address this issue.

Diversity jurisdiction as expanded by CAFA, presupposes two requirements:  1) minimal diversity between any member of a class action and any defendant; and 2) an aggregate amount in controversy that exceeds $5 million, exclusive of interest and costs.  *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 324 (5th Cir. 2008) (citing 28 U.S.C. § 1332(d)(2)); *In re Katrina Canal Litigation Breaches*, 524 F.3d 700, 706 (5th Cir. 2008).  Both requirements are satisfied here:  plaintiffs are diverse from defendant and the aggregate amount in controversy exceeds $5 million ($4,625,000 damages plus $1,156,250 attorneys fees).  *See* discussion, *supra*.

Plaintiffs argue, however, that CAFA jurisdiction does not extend to this case because the putative class action does not exceed 100 members.  28 U.S.C. § 1332(d)(5)(B).  Although plaintiffs allege in their petition that the membership of the proposed class is less than 100, they have the burden of supporting this allegation with adequate proof, when, as here, the issue is contested by defendant.  *Hertz Corp. v. Friend*, _____ U.S. _____, 130 S.Ct. 1181, 1194-95 (2010) ("[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof."); *Frazier v. Pioneer Americas*, LLC, 455 F.3d 542, 546 (5th Cir. 2006) (plaintiffs must demonstrate applicability of §§ 1332(d)(3)-(5) exceptions); *DeHart v. BP*

---

in controversy pointedly excluded costs, which they later defined to include reasonable attorneys' fees.  Petition, Prayer; *see also Grant, supra* (although costs are normally excluded  from the amount in controversy calculation, attorneys' fees are included as costs and expenses of class action litigation pursuant to La. Code Civ. Pro. Art. 595).

*America, Inc.*, 2010 WL 231744 (W.D. La. Jan. 14, 2010) (recognizing that 100 member class provision is an exception to CAFA jurisdiction, which must be established by party opposing removal).  Plaintiffs have not made the requisite showing here.

Accordingly, the court also enjoys subject matter jurisdiction, via diversity, as expanded by CAFA.  28 U.S.C. § 1332(d).

**C.   Consolidation**

Rule 42(a) provides that

> [w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a).

Rule 42(a) is permissive and consolidation lies within the discretionary authority of the court.  *In re Air Crash Disaster at Florida Everglades on December 29, 1972*,  549 F.2d 1006, 1013-1014 (5th Cir. 1977) (citations omitted).  "[I]t is for the court to weigh the saving of time and effort that consolidation would produce against any inconvenience, delay, or expense that it would cause." *Daybrook Fisheries, Inc. v. American Marine Const.*, 1998 WL 748586, *2  (E.D. La. 10/19/1998) (quoting 9 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 2383 at 439 (2nd ed.1995)).

One of the purposes of IP's motion to consolidate *Evans II*, *Belin*, and *Ackers* with *Evans I* was to increase the aggregate amount in controversy to ensure diversity jurisdiction under CAFA.  Having determined, however, that *Evans II*, *Belin*, and *Ackers* independently enjoy subject matter jurisdiction via traditional diversity and CAFA, the court need not consolidate them in an effort to manufacture jurisdiction.  Further, because plaintiffs unabashedly filed *Evans II, Belin*, and *Ackers* to circumvent the federal subject matter jurisdiction enjoyed by *Evans I*, these latter-filed cases are now superfluous and duplicative, and subject to dismissal as such.

10

*Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985).  In fact, this is one of the arguments raised

by IP in its pending, but, as yet, un-ripe motion to dismiss.  *See* March 7, 2011, Order (extending

plaintiffs' response deadline until 21 days after the ruling on their motion to remand).

    Accordingly, unless and until the court resolves IP's motion to dismiss in plaintiffs'

favor, the motion to consolidate remains premature.  The parties may re-urge the motion once the

pending motion to dismiss has been resolved, if necessary.

**<u>Conclusion</u>**

    For the foregoing reasons,

    IT IS ORDERED that the motion to remand [doc. # 12] filed by plaintiffs is hereby

**DENIED**.

    IT IS FURTHER ORDERED that the motion to consolidate [doc. # 16] filed by

defendant is hereby **DENIED**.

    THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 27th day of June

2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE